## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JOSEPH LEE BRANDON,                       :
                                          :       Civ. No. 12-5838 (AET) (LHG)
                    Plaintiff,            :
                                          :
         v.                               :       **OPINION**
                                          :
                                          :
LYINDA ALYIES, et al.,                    :
                                          :
                    Defendants.           :
_____   :

**THOMPSON, U.S.D.J.**

### I.       INTRODUCTION

Plaintiff is currently confined at the Ann Klein Forensic Center in West Trenton, New

Jersey.  He is proceeding *in forma pauperis* with a *pro se* amended complaint pursuant to 42

U.S.C. § 1983.

At this time, the Court must review the amended complaint pursuant to 28 U.S.C. §§

1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious,

for failure to state a claim upon which relief may be granted, or because it seeks monetary relief

from a defendant who is immune from suit.  For the reasons set forth below, the amended

complaint will be dismissed with leave to amend.

### II.      BACKGROUND

On September 17, 2012, plaintiff initially filed a complaint in this matter.  (*See* Dkt. No.

1.)  On January 31, 2013, the Court entered an Order directing plaintiff to combine the

allegations of the instant complaint with those in two other pending cases of his, Civ. Nos. 12-

6242 & 12-6243, as all three cases related to incidents that took place while plaintiff was

confined at the Ann Klein Forensic Center.  In other words, the Court gave plaintiff the opportunity to file one all-inclusive amended complaint in this action.  On March 18, 2013, plaintiff filed an amended complaint.

For purposes of screening the amended complaint, the allegations of the amended complaint are taken as true.  The amended complaint states that on June 12, 2012, plaintiff spoke to Douglas Smith and Warden Lyinda Alyies, telling them that there was a conflict of interest between plaintiff and Officer J. Sanders.  (*See* Am. Compl. at p. 1.)  Both Smith and Alyies agreed to keep plaintiff and Sanders separated.  (*See id.*)  On June 29, 2012, Officer Sanders allegedly fabricated an "emergency response order" against plaintiff.  (*See id.*)  Plaintiff was placed in disciplinary confinement for seventy-two hours which caused plaintiff to suffer loss of recreation, phone and visitation privileges during that time.  (*See id.*)  On June 31, 2012, plaintiff was again told by Alyies that he and Sanders would be kept separated.  (*See id.*)

On August 10, 2012, plaintiff asserts that Officer Sanders fabricated another "emergency response code."  (*See id.*)  Plaintiff was again placed in disciplinary confinement for the same amount of time and with the same "results."  (*See id.*)

On August 23, 2012, plaintiff states that while Sanders was responding to another housed individual, he pointed a "gun finger" at plaintiff in a threatening manner.  (*See id.*)  Plaintiff spoke to Alyies and Smith about this incident, but was told that they did not care if he got hurt by Sanders.  (*See id.* at p. 2.)  Plaintiff states that while there was supposed to be a camera in place to document allegations such as plaintiff's, it was not put in place until November 2012.  (*See id.*)

On September 10, 2012, plaintiff claims that he was assaulted by another inmate.  (*See id.*)  Plaintiff was again put in disciplinary confinement, and lost his visitation and phone

privileges for a day.  (*See id.*)  Plaintiff claims that this was due to Officer Phelps'[1] neglect in

notifying medical personnel that he had been acting in self-defense during the assault.  (*See id.*)

On September 16, 2012, a court hearing was held and plaintiff was given "an additional

six months," because of the incidents cited above and because of a recommendation from Smith.

(*See id.* at p. 3.)  Plaintiff states that he explained to the judge the conflict of interest he had with

Officer Sanders, yet he still was given "additional time."  (*See id.*)  Plaintiff summarizes his

complaint by claiming Alyies and Smith should have prevented the situations that delayed his

discharge and his being placed in disciplinary confinement, which caused him to lose several of

his privileges.  (*See id.*)

### III.    STANDARD OF REVIEW

A. Standards for *Sua Sponte* Dismissal

The Prison Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321 (Apr. 26, 1996),

requires a district court to review a complaint in a civil action in which a prisoner is proceeding

*in forma pauperis* or seeks redress against a governmental employee or entity.  The Court is

required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous,

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from

a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).  This

action is subject to both 28 U.S.C. § 1915(e)(2)(B) and 1915A because plaintiff is proceeding *in*

*forma pauperis* and is a prisoner.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief."  However, "a

pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

---

[1] The amended complaint does not include Officer Phelps' first name.

*v. Twombly*, 550 U.S. 544, 555 (2007)).  To prevent summary dismissal, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of the complaint are plausible.  *See* 556 U.S. at 678-79; *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).  "A complaint must do more than allege a plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citation omitted).  The Court liberally construes the complaint in favor of plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011) ("Pro se filings . . . must be liberally construed.").

B.  <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. 1983 for certain violations of his Constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See Harvey v. Plains Tp.*

*Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988)).

## IV.   DISCUSSION

### A.   Conditions of Confinement

Plaintiff first asserts a condition of confinement claim.  He states that on two occasions he was placed in confinement which caused him to lose visitation, recreation and phone privileges for seventy-two hours.  Additionally, on a third occasion, he states that he was placed in confinement which caused him to lose his visitation and phone privileges for one day.  All three were the result of discipline being levied against plaintiff.

To state a condition of confinement claim under the Eighth Amendment, a plaintiff must allege both an objective and a subjective component.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Counterman v. Warren Cnty. Corr. Facility*, 176 Fed. Appx. 234, 238 (3d Cir. 2006).  Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *See Hudson v. McMillan*, 503 U.S. 1, 9 (1992).  As to the objective component, only those deprivations denying the "minimal civilized measure of life's necessities," which includes food, clothing, shelter, sanitation, medical care and personal safety, qualify as sufficiently grave to form the basis for an Eighth Amendment violation.  *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 835 (1994)).  As to the subjective component, the plaintiff must show that the prison official acted with deliberate indifference to the prisoner's health or safety.  *See Wilson*, 501 U.S. at 298-99.

Plaintiff's amended complaint fails to allege that he was deprived of minimal civilized life necessities.  Plaintiff claims he was without visitation, phone and recreation privileges for up to three days.  The loss of these privileges for up to three days does not state a claim.  *See*

*Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (stating that withdrawal of visitation privileges for a limited period of time as a regular means of effecting prison discipline "is not a dramatic departure from accepted standards for conditions of confinement"); *see also Milton v. Ray*, 301 Fed. Appx. 130, 133 (3d Cir. 2008) (per curiam) (loss of commissary privileges for two months did not amount to a hardship of sufficient magnitude to implicate a liberty interest); *Georges v. Ricci*, Civ. No. 07-5576, 2007 WL 4292378, at *7 (D.N.J. Dec. 4, 2007) (placement in segregated housing unit for ninety-two days which denied prisoner visitation and telephone contacts with family members did not state a claim as it did not qualify as a minimal life's necessity); *Leon v. Schaaf*, Civ. No. 05-4296, 2005 WL 2397241, at *4 (D.N.J. Sept. 23, 2005) (loss of commissary and telephone privileges for 120 days due to placement in segregated confinement did not state a claim).

To the extent that plaintiff alleges that the charges which caused him to lose his privileges were false, plaintiff also fails to state a claim on that basis.  In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that a prisoner facing the deprivation of a legally cognizable liberty interest has a due process right to certain procedural protections.[2]  "However, an inmate's due process rights are not triggered [under *Wolff*] unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Crosby*, 465 Fed. Appx. at 172 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

---

[2] For example, in *Wolff*, the Supreme Court determined that, at a prison disciplinary proceeding, due process requires that the inmate:  (1) appear before an impartial decision-making body; (2) be given not less than 24 hours written notice of the charges against him; (3) be afforded an opportunity to call witnesses and present documentary evidence; (4) be permitted assistance from an inmate representative; and (5) receive a written decision explaining the decision-maker's conclusions.  *See Crosby v. Piazza*, 465 Fed. Appx. 168, 171-72 (3d Cir. 2012) (per curiam) (stating the procedural protections afforded a prisoner by *Wolff*) (citing *Wolff*, 418 U.S. at 563-71).

Plaintiff's allegations that his recreational, phone and visitation privileges were affected for up to three days fail to state that the purported false charges implicated a protected liberty interest. *Accord Suggs v. Dep't of Corr.*, Civ. No. 07-170, 2008 WL 4222109, at *5 (W.D. Pa. Sept. 15, 2008) (finding that plaintiff had not demonstrated protected liberty interest was offended by defendant purportedly issuing a false report as plaintiff had only received a loss of telephone and dayroom privileges for twenty days); *see also Gay v. Shannon*, 211 Fed. Appx. 113, 116 (3d Cir. 2006) (per curiam) (stating that district court did not err in dismissing claims based on issuance of allegedly false misconduct report for refusing to double cell as plaintiff "did not allege facts supporting the conclusion that his confinement in restricted custody as a result of the misconduct report subjected him to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). Accordingly, plaintiff also fails to state a Constitutional claim arising out of his allegations of false charges and the punishment plaintiff received because of them. However, plaintiff shall be given the opportunity to submit a second amended complaint to the extent that he can plead additional facts stating that he was denied minimal life's necessities and that the defendants acted with deliberate indifference and/or that his due process rights were violated, depriving plaintiff of a constitutionally protected liberty interest.

B. Threatening Gesture

Plaintiff also appears to assert that Officer Sanders made a threatening gesture towards him; more specifically, plaintiff claims that Officer Sanders pointed a "gun finger" at him. While the amended complaint is difficult to decipher, the Court construes the complaint as

alleging that Officer Sanders pointed his fingers at plaintiff in the shape of a gun and in a threatening manner.[3]

The Eighth Amendment protects prisoners against calculated harassment. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The United States Supreme Court has stated that, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." *Id.* at 528. However, mere verbal harassment or gestures of a custodial officer generally do not state a Constitutional violation. *See Durham v. Vekios*, Civ. No. 09-5376, 2010 WL 5479633, at *5 (D.N.J. Dec. 22, 2010) ("Allegations that prison personnel have used threatening language and gestures are also not cognizable under § 1983.") (citing *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979)); *see also Young v. Dep't of Corr.*, Civ. No. 12-2408, 2013 WL 84854, at *4 (M.D. Pa. Jan. 7, 2013) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.") (citations omitted); *Bendy v. Ocean Cnty. Jail*, Civ. No. 06-2616, 2006 WL 2403924, at *4 (D.N.J. Aug. 18, 2006). Nevertheless, "threatening language coupled with threatening use of a weapon and outrageous conduct by prison personnel" may state a claim. *See Bendy*, 2006 WL 2403924, at *4 (citations omitted). For example, actually threatening the life of a prisoner with a knife has been found to sufficiently state a claim. *See Douglas v. Marino*, 683 F. Supp. 395, 398 (D.N.J. 1988). In another context, a plaintiff has sufficiently stated a claim where he alleged that an officer put a gun to plaintiff's head and threatened to shoot. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

In this case, plaintiff's allegation that Officer Sanders pointed his fingers at him in the shape of a gun and in a threatening manner, without more, is insufficient to state a Constitutional

---

[3] The amended complaint states, "Officer J. Sander[s] respond point a gun finger at me in a t[h]reat[en]ing manner." (Am. Compl. at p. 1.)

claim.  This assertion alleges only a threatening gesture and does not amount to a Constitutional

violation.  It does not allege further acts, such as brandishing a real weapon and threatening

petitioner with death, which could state a claim.  *See, e.g.*, *Bendy*, 2006 WL 2403924, at *4

(stating that threatening language coupled with threatening use of a weapon could indicate a

constitutional deprivation); *Douglas*, 684 F. Supp. at 398 (brandishing butcher knife in close

proximity to prisoner and threatening to kill him may amount to Constitutional violation).

However, as it is possible that plaintiff could allege facts sufficient to raise a Constitutional

claim, plaintiff shall be given leave to file a second amended complaint on this claim as well.

C.  Delay of Discharge

Finally, plaintiff seems to dispute an order by Judge Mark Flemming from September 16,

2012, which ordered plaintiff to serve an "additional six months."  (Am. Compl. at p. 3.)   It

appears as if plaintiff wishes the Court to entertain the argument that his "additional six months"

was improperly ordered by the state court.  This claim is barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine bars district courts from "entertain[ing] constitutional claims that

have been previously adjudicated in state court or that are inextricably intertwined with a state

adjudication."  *See Whiteford v. Reed*, 155 F.3d 671, 673-74 (3d Cir. 1998).  "'[T]here are four

requirements that must be met for the doctrine to apply:  (1) the federal plaintiff lost in state

court; (2) the plaintiff complains of injuries caused by the state court judgments; (3) those

judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the

district court to review and reject the state judgments.'"  *See Abulkhair v. Dir. of N.J. Dep't of

Human Servs.*, 474 Fed. Appx. 82, 84 (3d Cir. 2012) (per curiam) (quoting *Great W. Mining &

Mineral Co. v. Fox Rothchild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).  The Court finds that all

four elements are met in this case.  Specifically, plaintiff lost in state court as he was "ordered to

serve an additional six months." Second, plaintiff complains about this additional six-month order. Third, Judge Flemming's order was issued on September 16, 2012, before plaintiff initiated this action. Finally, plaintiff seeks a review of that order. Accordingly, this claim is barred by the *Rooker-Feldman* doctrine. *Accord Moncrief v. Chase Manhattan Mortg. Corp.*, 275 Fed. Appx. 149, 152-53 (3d Cir. 2008) (per curiam) (where plaintiff seeks redress from state court judgment, claim was properly dismissed under *Rooker-Feldman*).

## V.    CONCLUSION

For the reasons set forth above, the amended complaint will be dismissed without prejudice for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff shall be granted leave to move to re-open this action and to file a second amended complaint. If plaintiff chooses to file a second amended complaint, it should be complete on its face because a second amended complaint supersedes the amended complaint.

DATED: June 14, 2013

/s/ Anne E. Thompson

_____
ANNE E. THOMPSON
United States District Judge

10